# CORRECTED COVERSHEET:September 26,2007

# United States Court of Appeals for the Federal Circuit

2006-7313


MONSERRATE C. ANDINO,

Claimant-Appellant,

v.


R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.


Daniel D. Wedemeyer, Wedemeyer & Prangley, of West Hills, California, argued for claimant-appellant.  On the brief was Glenn R. Bergmann, Bergmann & Moore, LLC of Bethesda, Maryland.

Dawn S, Conrad, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee.  With her on the brief were Peter D. Keisler, Assistant Attorney General, and Deborah A. Bynum, Assistant Director.  Of counsel on the brief were David J. Barrans, Assistant General Counsel, and Jamie L. Mueller, Attorney, United States Department of Veterans Affairs, of Washington, DC.

Appealed from:  United States Court of Appeals for Veterans Claims

Judge Lawrence B. Hagel

# United States Court of Appeals for the Federal Circuit

2006-7313

MONSERRATE C. ANDINO,

Claimant-Appellant,

v.

R. JAMES NICHOLSON, Secretary of Veterans Affairs,

Respondent-Appellee.

_____

DECIDED: September 10, 2007

_____

Before MAYER, RADER, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

Monserrate C. Andino appeals an order of the Court of Appeals for Veterans Claims (Veterans Court) affirming a 2003 decision of the Board of Veterans' Appeals (Board) that found no clear and unmistakable error (CUE) in a 1975 Board decision upholding a Regional Office (RO) determination severing service connection for schizophrenia. Andino v. Nicholson, No. 03-1865 (Vet. App. Mar. 16, 2006). Because the Veterans Court erroneously interpreted 38 C.F.R. § 3.105(d), the regulation governing severance of service connection, we vacate and remand.

## BACKGROUND

Mr. Andino served on active duty from January 1969 to November 1970. One month after separation from the Army, in December of 1970, a VA physician diagnosed Andino with undifferentiated schizophrenic reaction. The same VA physician rendered

the same diagnosis (schizophrenia) again in January 1971 when Andino was admitted to the psychiatric unit of a VA hospital. In March and then again in May 1971, physicians diagnosed Andino with schizophrenic reactions, undifferentiated. In an October 1971 rating decision, a VA RO granted 100% service connection for schizophrenia, undifferentiated. The rating decision noted that while a diagnosis of anxiety reaction had also been made after a period of hospitalization from January 13 to February 10, 1971, that diagnosis was "subject to reservations about a possible underlying schizophrenic process." The rating decision also noted that the last hospital report shows schizophrenia with persistent "marked active symptoms" despite some improvement and "less frequent hallucinations."

However, in February 1973, the RO severed this service connection, finding clear and unmistakable error (CUE) in the decision awarding connection. It based this determination on an unsolicited 1972 letter from Dr. Durand at the VA hospital in San Juan, Puerto Rico—which stated that Andino had been "admitted twice to our Service" and that the prior diagnosis of schizophrenia at that hospital was "in error." Andino appeals the decision severing service connection.

DISCUSSION

We have exclusive jurisdiction to "review and decide any challenge to the validity of any statute or regulation or any interpretation thereof" by the Veterans Court "and to interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." 38 U.S.C. § 7292(a), (c). The construction of a regulation is a question of law, reviewed <u>de novo</u> on appeal. <u>Wallace v. Office of Pers. Mgmt.</u>, 283 F.3d 1360, 1361 (Fed. Cir. 2002).

38 C.F.R. § 3.105 (1975) details the requirements for severance based on a change in diagnosis:

> **(d) Severance of service connection.** . . . A change in diagnosis may be accepted as a basis for severance action if the examining physician or physicians or other proper medical authority certifies that, in the <u>light of all accumulated evidence</u>, the diagnosis on which service connection was predicated is <u>clearly erroneous</u>. This certification must be accompanied by a summary of the facts, findings, and reasons supporting the conclusion.

(Emphases added). The regulation was amended in 1961 to replace the language "not correct" with "clearly erroneous." 26 Fed. Reg. 1569 (1961).

The plain language of the regulation provides that service connection can only be terminated when a medical professional certifies that her <u>review of all the evidence</u> indicates that the prior diagnosis is "clearly erroneous."[1] Under the uncontested facts of this case, there were at least five diagnoses of schizophrenia or symptoms of an underlying schizophrenic process and a single diagnosis of an anxiety reaction (which did not preclude schizophrenia as well) before the VA when it rendered its original rating

---

[1] It is not enough that the VA conclude that it would have decided the issue differently had it been analyzing all the evidence to determine whether to grant service connection in the first instance. To be "clearly erroneous" there must be a definite and firm conviction that a mistake has occurred. <u>See</u> <u>Easley v. Cromartie</u>, 532 U.S. 234, 242 (2001) ("In applying [the clear error] standard, we, like any reviewing court, will not reverse a lower court's finding of fact simply because we 'would have decided the case differently.' Rather, a reviewing court must ask whether, 'on the entire evidence,' it is 'left with the definite and firm conviction that a mistake has been committed.'" (internal citations omitted)); <u>Concrete Pipe & Prods. of Ca., Inc. v. Constr. Laborers Pension Trust for S. Ca.</u>, 508 U.S. 602, 623 (1993) (Stating that "review under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed'"); <u>United States v. U.S. Gypsum Co.</u>, 333 U.S. 364, 395 (1948) (Indicating that reversal of a finding under the clearly erroneous standard is proper only when the reviewing court "is left with the definite and firm conviction that a mistake has been committed.").

decision. The VA considered this evidence "as a whole," including the anxiety diagnosis, and granted service connection for schizophrenia in October 1971.[2]

The VA's decision to sever service connection in 1973 was based upon Dr. Durand's 1972 letter in which he concludes that "the diagnosis of schizophrenia made at Hato Rey Psychiatric Hospital was in error" based upon the records from the two prior admissions to the Hato Rey Psychiatric Hospital. Section 3.105(d) states that a change in diagnosis can be the basis for severance if the "medical authority certifies that, in light of all accumulated evidence, the diagnosis on which service connection was predicated is clearly erroneous." This regulation requires that the certifying medical authority must make a decision based upon all of the accumulated evidence. To the extent that the Board has interpreted section 3.105(d) as permitting severance to be based upon a medical opinion that considered some but not all of the evidence that was before the VA when it rendered its service connection decision, that construction is erroneous.[3]

In this decision we are not making credibility determinations or weighing evidence—all of which is beyond our jurisdiction. We will not, and can not, reverse in light of the fact that there were five separate diagnoses of schizophrenia and one diagnosis of anxiety disorder (which did not preclude schizophrenia) or because Dr. Durand never treated Andino or because the two hospitalizations considered by the VA had both already been considered by the VA at the time of the original rating granting

---

[2]    Andino was again diagnosed with schizophrenia in 1974, but this diagnosis occurred after both the 1971 rating decision granting service connection and the 1973 severance decision, so it was not considered by the VA.

[3]    The Veterans Court agreed with the Board that Durand's letter constituted sufficient evidence to support the VA's severance decision under section 3.105.

service connection. Even with a mountain of evidence which contradicts a fact finding, we cannot disturb this finding on appeal.

However, where the Board and the Veterans Court interpret section 3.105(d) as permitting severance on the basis of a physician letter that did not consider all the evidence accumulated by and considered by the VA in granting the original service connection, this interpretation is erroneous.

<u>VACATED and REMANDED</u>