# United States Court of Appeals for the Federal Circuit

---

**RODERICK C. STALLWORTH,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, Secretary of Veterans Affairs,**
*Respondent-Appellee.*

---

2013-7044

---

Appeal from the United States Court of Appeals for Veterans Claims in No. 11-0952, Judge William A. Moorman.

---

Decided: February 10, 2014

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

TARA K. HOGAN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were DAVID J. BARRANS, Deputy Assistant General Counsel, and

CHRISTINA L. GREGG, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before LOURIE, DYK, and TARANTO, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Roderick C. Stallworth ("Stallworth") appeals from the decision of the United States Court of Appeals for Veterans Claims (the "Veterans Court") affirming the decision of the Board of Veterans' Appeals (the "Board") finding no clear and unmistakable error ("CUE") in an earlier decision denying restoration of service connection for schizophrenia. *See Stallworth v. Shinseki*, No. 11-0952, 2012 WL 4882264 (Vet. App. Oct. 16, 2012) (unpublished). Because the Veterans Court did not err in interpreting the governing regulation and we lack jurisdiction to review the Veterans Court's application of the regulation to the facts, we affirm.

BACKGROUND

Stallworth served on active duty in the U.S. Army from May 1974 to July 1975. In March 1975, he experienced a psychotic episode that was attributed to his illicit use of the drug LSD. He recovered with hospitalization, but relapsed following return to active duty. Stallworth's service medical records indicate that he was diagnosed with acute paranoid schizophrenia in April 1975. J.A. 21. Stallworth was transferred to the Department of Veterans Affairs ("VA") Medical Center in Biloxi, Mississippi for psychiatric treatment, but the treating physician noted that it was not clear whether Stallworth's illness was caused by his drug use or whether he had an independent psychosis. J.A. 150. In July 1975, Stallworth was separated from service after an Army medical board found him unfit for further military duty. In October 1975, a VA Regional Office ("RO") awarded Stallworth service connection for schizophrenia at a 50% disability rating. *See In re*

*Stallworth*, No. 02-18 972, slip op. at 5 (Bd. Vet. App. Dec. 3, 2010).

Stallworth was then frequently admitted to inpatient psychiatric facilities where medical professionals repeatedly opined that he had "no mental disorder." They included his primary treating physician, who concluded that Stallworth did not have schizophrenia. *Id.* at 6. In March 1977, four staff physicians at the Biloxi VA Medical Center stated that Stallworth "ha[d] no evidence of a mental illness and he [was] fully responsible for his behavior" and was successfully manipulating transfer to various hospitals through "deceptive practices." J.A. 33. The four doctors opined that Stallworth's service connection diagnosis was "in error and mistakenly made, when [it] should have been psychosis with drug or poison intoxication (other than alcohol) LSD." *Id.* Accordingly, the VA severed Stallworth's service connection on the basis of CUE. *See In re Stallworth*, No. 02-18 972, slip op. at 8. The RO denied Stallworth's request to reopen his claim because of a lack of new evidence, and Stallworth appealed to the Board.

In 1981, the Board affirmed the denial of restoration of service connection, concluding that the October 1975 grant was the product of CUE. *In re Stallworth*, No. 80-22 526, slip op. at 8–9 (Bd. Vet. App. Jan. 27, 1981). The Board evaluated the evidence and determined that Stallworth's one episode of acute psychosis was secondary to illicit drug use and resolved without residual effects. *Id.*

Following years of continuing adjudication, the Board finally concluded that there was no CUE in the 1981 Board decision, which denied restoration of service connection based on the correct law and facts available at that time. *In re Stallworth*, No. 02-18 972, slip op. at 19. The Board found the facts distinguishable from *Andino v. Nicholson*, 498 F.3d 1370 (Fed. Cir. 2007), in which there was no indication that the doctor certifying severance had

reviewed all of the relevant medical records. *Id.* at 15. The Board found that the doctors who determined that Stallworth's 1975 service connection diagnosis was clearly erroneous provided an opinion based on all of the accumulated evidence. *Id.*

Stallworth then appealed to the Veterans Court, arguing that the Board misapplied or misinterpreted § 3.105(d) by failing to recognize that the March 1977 hospitalization report was inadequate to meet the standard for severance of service connection. *Stallworth*, 2012 WL 4882264 at *3. Stallworth argued that the examining physicians did not certify that the previous diagnosis was clearly erroneous and that the statements relied upon by the examining physicians did not address all of the accumulated evidence. *Id.*

The Veterans Court affirmed the Board's decision, holding that the Board did not misapply or misinterpret § 3.105(d) and that the decision was not arbitrary, capricious, or otherwise not in accordance with law. *Id.* at *1. The court was satisfied with the Board's explanation of the evidence showing that "the physicians had found the prior diagnosis 'to be in error and mistakenly made'" and the Board's finding that the "hospital report was thorough and accompanied by a summary of the facts, findings, and reasons supporting the conclusion." *Id.* at *6. The court also found that the Board "analyzed whether the hospital report evidenced that the physicians took into account the accumulated evidence available at that time." *Id.* at *7.

This appeal followed.

DISCUSSION

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292. We "have exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof [by the Veterans Court] . . . and to

interpret constitutional and statutory provisions, to the extent presented and necessary to a decision." *Id.* § 7292(c). We may not, however, absent a constitutional challenge, "review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." *Id.* § 7292(d)(2). We therefore generally lack jurisdiction to review challenges to the Board's factual determinations or to any application of law to fact. *See, e.g.*, *Johnson v. Derwinski*, 949 F.2d 394, 395 (Fed. Cir. 1991). But we do have jurisdiction here to determine the proper interpretation of 38 C.F.R. § 3.105(d). *Forshey v. Principi*, 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc) (superseded on other grounds by Pub. L. No. 107-330, § 402(a), 116 Stat. 2820 (2002)).

The law permits severance of service connection for previously awarded disability benefits, *i.e.*, reversing an earlier finding that a particular disability was connected to military service and cutting off benefits that had been awarded based on that finding. *Prinkey v. Shinseki*, 735 F.3d 1375, 1377 (Fed. Cir. 2013). In particular, § 3.105(d) provides in relevant part as follows:

> A change in diagnosis may be accepted as a basis for severance action if the examining physician or physicians or other proper medical authority certifies that, in the light of all accumulated evidence, the diagnosis on which service connection was predicated is clearly erroneous. This certification must be accompanied by a summary of the facts, findings, and reasons supporting the conclusion.

Thus, the plain language of the regulation dictates that service connection may be terminated if a medical professional certifies that his or her review of all accumulated evidence indicates that the prior diagnosis is clearly erroneous. *Andino*, 498 F.3d at 1372; *see also Lockheed Corp. v. Widnall*, 113 F.3d 1225, 1227 (Fed. Cir. 1997) ("To interpret a regulation we must look at its plain

language and consider the terms in accordance with their common meaning.").

Stallworth argues that the Veterans Court misinterpreted § 3.105(d) and failed to follow *Andino* by affirming the Board's reliance upon a medical opinion that failed to certify that "in light of all accumulated evidence, the diagnosis upon which service connection was predicated is clearly erroneous." Appellant Br. 7. The Secretary responds that the Veterans Court merely affirmed the Board's factual finding that the 1977 medical report did provide such certification, even though the physicians did not recite the precise language of § 3.105(d).

We agree with the Secretary. Stallworth essentially argues that *Andino* obligates the requisite medical authority to use magic words such as "clearly erroneous" when providing an opinion pursuant to § 3.105(d). But this misconstrues our law. In *Andino*, the decision of the certifying medical authority was not based on a consideration of all the accumulated evidence. *Andino*, 498 F.3d at 1373. We therefore held that service connection could not be severed based on a medical opinion that did not consider all accumulated evidence, but we did not require the use of any particular certifying language. *Id.*

Stallworth's case is similar to that of the veteran in *Prinkey*, in which the Board and the Veterans Court considered all of the evidence of record and found that nothing in § 3.105(d) precluded severance of service connection for diabetes and related disabilities on that basis. *Prinkey*, 735 F.3d at 1383. We noted in *Prinkey* that the Veterans Court did not hold that an inadequate medical opinion could suffice under § 3.105(d) to establish that a prior diagnosis is clearly and unmistakably erroneous, but that the court in that case merely agreed with the Board as a matter of fact that a later medical examination was sufficient, although neither the Board nor the Veterans Court relied exclusively on those later medical

opinions. *Id.* Significantly, we declined to require that such certification use language that exactly parroted the regulation.

Here, the Veterans Court likewise found no error in the Board's determination that severance was based upon a medical report that did consider all of the accumulated evidence and that, in substance, certified that the prior service connection diagnosis of schizophrenia was clearly erroneous without exactly reciting the language of the regulation. There is no contention that the Board failed to use the correct "clearly erroneous" standard in determining the adequacy of the medical opinion. And although Stallworth contends that the Veterans Court applied the wrong standard, we find that both the Board and the Veterans Court properly recited and applied the correct legal standard: the Board stated that "[s]ervice connection, once granted, may not be severed unless the grant thereof was clearly and unmistakably erroneous," J.A. 45, and the Veterans Court stated that

> [a]lthough the Board did not explicitly state whether the physicians certified that the prior diagnosis was "clearly erroneous," the Board's analysis . . . does not indicate to the Court that the Board committed any remandable error by concluding that this language was adequate to meet, in pertinent part, the requirements of section 3.105(d).

*Stallworth*, 2012 WL 4882264 at *6. Stallworth's assertion that § 3.105(d) can be satisfied only by recitation of the exact language of the regulation in the medical opinion would elevate form over substance.

We thus conclude that nothing in the plain language of § 3.105(d) requires medical opinions to employ the specific language of that regulation. The regulation describes the substance required of the physician's certifi-

cation, rather than prescribing any magic words that must be employed.

## CONCLUSION

We have considered Stallworth's remaining arguments and conclude that they are without merit. Because the Veterans Court did not err in interpreting the governing regulation, we affirm.

**AFFIRMED**